In re McCOY.

BOWEN v. CHAPMAN.

(Circuit Court of Appeals, Seventh Circuit. November 8, 1906.)

No. 1,282.

BANKRUPTCY—PROOF OF CLAIMS—PARTNERSHIP—INDIVIDUAL DEBTS.

Bankruptcy Act July 1, 1898, c. 541, § 5, subd. f, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3424], provides that the net proceeds of partnership property shall be appropriated to partnership debts, and the net proceeds of the individual estate of each partner to his individual debts; that, if any surplus remain of the property of any partner after paying his individual debts, the surplus shall be applied to the partnership debts; and that, if any surplus remain after paying the partnership debts, it may be added to the assets of the individual partners in proportion to their respective interests in the firm. Held that, where the members of a firm borrow money on their individual credit for the benefit of the firm, the lender, after having obtained a dividend from the firm's assets in bankruptcy, may have his claim allowed for the balance due thereon as a claim against the individual partners.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 557, 564.]

Appeal from the District Court of the United States for the District of Indiana.

The appeal is from an order disallowing the claim of appellant against the individual estate of Alfred McCoy, bankrupt, "subject only to such right as appellant might have in said estate as a creditor of the estate of A. McCoy & Co., bankrupt, after the payment of the individual creditors of the estate of Alfred McCoy, bankrupt."

The facts are stated in the opinion.

M. Winfield, for appellant.

S. P. Thompson, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion.

The firm of A. McCoy & Co., was, at the time of the adjudication of bankruptcy, a banking copartnership at Rensselaer, Indiana—the partners being Alfred McCoy and Thomas McCoy, likewise bankrupts; both the firm and the individuals having been adjudged bankrupts July 11th, 1904.

The appellant was, at the time of the transaction in question, a banker in New York City, doing business under the name of A. T. Bowen & Co. August 20th, 1903, there was borrowed from appellant, upon ninety days time, the sum of five thousand dollars, and on November 6th, 1903, the further sum of five thousand dollars, for which two promissory notes were given, signed by the firm of A. McCoy & Co., and by the individual names, Alfred McCoy, and Thomas McCoy; the proceeds of the transaction going into the copartnership business. Upon the firm becoming bankrupt, and the individual partners becoming bankrupt also, these notes were presented and allowed as claims against the firm, and payments thereon have been made to the extent of thirty per cent. The claim presented against the estate of Alfred

McCoy, and disallowed, is predicated on these notes to the extent that they remain unpaid.

In addition to the presumption arising on the face of the notes, with the signatures thereto, the record shows that at the time the money was borrowed and the notes executed, appellant said to Alfred McCoy, who negotiated the loan, that he (appellant) "thought some collateral ought to be put up"; whereupon McCoy said that the partners "individually owned four thousand acres of land, and that they would sign the notes individually."

At common law, the notes under the circumstances are not only the obligation of the firm, but also of the individuals; and this is the law in Indiana. Winslow v. Wallace, 116 Ind. 317, 17 N. E. 923, 1 L. R. A. 179.

"There seems to be no dispute" says Mitchell, J., in Winslow v. Wallace, supra, "as indeed there could not well be, upon the proposition that a creditor who holds a note of which a firm are the makers, and one or more members thereof endorsers, has in his hands a valid joint obligation against the firm, and at the same time a distinct, several and separate obligation against those who have signed as endorsers. This result flows from the fact that the contract of an endorser is entirely independent of and distinct from that of the maker, each contract being in itself, when the endorsement is in regular course, conclusive in its legal import. The creditor holding a note so made and endorsed, may, therefore, pursue his remedy against the partners as makers, and he may also proceed against those individually liable as endorsers. When the property of the firm, or the individual estates of the members bound as endorsers, are being judicially administered, the creditor is entitled to participate with the partnership creditors in the joint estate, and he may at the same time avail himself of any appropriate remedy he would otherwise have against the endorsers or their respective estates. He may receive dividends from the joint estate as a partnership creditor, and from the separate estate of the partners liable on their contract of endorsement as an individual creditor."

In re Thomas et al., 8 Biss. 139, Fed Cas. No. 13,886, the case of a note signed by the partners individually for a loan, the proceeds of which went to the copartnership—it is said:

"There is a class of cases in which it has been held that where a creditor holds notes signed by a firm, and signed or indorsed also by an individual member of the firm, he may prove against both estates, and receive dividends from both. In re Farnum, Fed. Cas. No. 4,674; Mead v. National Bank of Fayetteville, Fed. Cas. No. 9,366; Emery v. Canal National Bank, Fed Cas. No. 4,446. These cases establish a rule opposed to the old rule on the subject in England, and the principle thus settled seems to reach out to the question involved in the case at bar. The scope of these decisions is, that when an individual member of a firm, as such, becomes surety upon or indorses an obligation of the firm, he thereby gives what is in the nature of security upon his separate estate to the firm creditor; and, by reason of the individual liability superadded to the joint obligation, he places the firm creditor in a position where he can go against the individual as well as the joint estate. Thus it results, that without the indorsement or individual signature of one of the firm, the firm creditor would have no right to claim against the individual assets until individual creditors had been first satisfied. But holding the individual indorsement or signature, the firm creditor may, in the first instance, prove against the separate as well as the joint estate. Now, such separate liability would

seem to be, at least, in the nature of security though differing radically, it is true, in character and form from that of a mortgage, and yet double proof, by the firm creditor in such case, may be made without any abatement of advantage which his diligence has secured."

Indeed these principles are not seriously controverted—the learned district judge predicating his opinion upon a supposed modification of this rule introduced by the bankruptcy act. That modification, if there be any, is contained in section 5, subd. "f," Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3424], which reads as follows:

"The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership."

This provision was not intended, as we look at it, to modify in any respect, the pre-existing law. The section is, indeed, only a re-enactment of pre-existing law. The claim disallowed, was not a claim for the payment of a partnership debt out of the individual estate. Had it been, the disallowance would have been proper; for both under the section of the statute, and under the pre-existing law, any surplus remaining after the payment of individual debts would have been added to the partnership assets, and, thereby have become available to the payment of appellant's debt. The claim disallowed, was a claim for McCoy's individual debt—as much so as if McCoy had individually, on a separate piece of paper, obligated himself for this debt. And because it is his individual debt it is provable under the section cited, as well as under the general law, against his individual estate. True, the proceeds of the loan having gone into the partnership estate, it may be that individual creditors could insist, that in the marshaling of assets, the partnership estate should be exhausted before payment is made by the individual estate. That, however, is a question we do not decide, for the appellant only seeks to prove his claim against the individual estate, to the extent that it is unpaid by the partnership estate.

The opinion of the District Court rests chiefly upon the case of Gauss v. Schrader (C. C.) 48 Fed. 816, in which two men, indebted as partners on two promissory notes past due, entered into a written contract, in consideration of an extension of time, to convey to the creditor certain property, not a part of the partnership assets, as additional security. Upon the creditor seeking to prove his claim, arising out of this executory promise, against the individual estate of one of the partners, the court well said that the character of the principal indebtedness was not thereby changed—that the partnership debt was not thereby made an individual debt.

In England the old rule was, that in administering the bankrupt laws of that country, double proof against the partnership estate and the individual estate of the partners was not allowed. But this rule has not been followed in this country (Emery v. Canal National Bank,

Fed. Cas. No. 4,416; Bump's Bankruptcy [5th Ed.] p. 198; In re Bradley, Fed. Cas. No. 1,772; In re Farnum, Fed. Cas. No. 4,674; Mead v. National Bank of La Fayette, 6 Blatchf. 180, Fed. Cas. No. 9,366; In re Bigelow, 3 Ben. 146, Fed. Cas. No. 1,397); and there is nothing in the bankruptcy act showing that this English·rule was intended to be embodied in our act. Indeed, it is doubtful if the old rule is now in force in England.

The order appealed from must be reversed, with instructions to the court below to allow the claim as a debt against the individual estate of Alfred McCoy, to be paid therefrom ratably with the other creditors of that estate, to the extent that such debt is not paid in the administration of the estate of the firm of McCoy & Co.

NOTE.—The following is the opinion of Anderson, District Judge, on approving the decision and order of the referee:

ANDERSON, District Judge. The petitioner claims the right to pursue both the partnership and the individual estate; to share with the partnership creditors in the partnership property and with the individual creditors in the individual property.

This claim is based upon the fact that the notes are signed by A. McCoy & Co., the firm, and by Alfred McCoy and Thomas J. McCoy, the individual members of the firm. The partnership received the entire consideration of these notes. It is therefore a partnership debt. Petitioner apparently wishes to occupy two different positions in the matter. In his first assignment of error he claims that he occupies the relation of surety for the firm. In the other assignments he claims that the individuals expressly stipulated that, "in addition to the firm obligation, they would sign said notes individually making themselves individually liable in addition to the liability which might arise because of the firm obligation." Under the reasoning of the referee, and the authorities cited by him, it does not seem to me that Alfred McCoy can be surety for the firm. The conclusion of the referee that the signing of the individual names added nothing to the liability of the individual members of the firm, and that the claim cannot be allowed against the individual estate, is further supported by a decision of Judge Drummond in the case of Gauss v. Schrader (C. C.) 48 Fed. 816. In that case Dobschutz & Abend, as partners, were liable on two promissory notes, indorsed by the firm. The firm was not able to pay the notes when they became due, and to secure an extension of time Dobschutz and Abend individually made a contract with the payee in and by which their liability was admitted and the extension was granted in consideration of security being given by Dobschutz and Abend. The notes were not paid and the security was not given. Dobschutz and Abend were adjudged bankrupts as partners and as individuals, and the payee sought to file the notes as a claim against the individual estate of Dobschutz. The argument was made there, as here, that by signing the contract Dobschutz made himself individually liable. The District Court held that the claim could not be filed against his individual estate, and this decision was affirmed by Judge Drummond, who, in the course of his opinion, said: "It will be seen that the agreement to convey the land was not for the purpose of payment, and, if conveyed, it would not have operated as such, but only as security for the payment of the indebtedness. so that the effect of the failure of the bankrupts was simply that they did not give the security which they agreed to give. The result was that the plaintiff thus gave time to·the bankrupts, and the character of the debt remained unchanged. It was still a partnership debt due from the bankrupts to him. It becomes, therefore, a question of importance in this case, in view of the partnership and separate assets of the bankrupts and of the rights of their creditors, to determine whether it is equitable for the plaintiff, as against other individual creditors of Dobschutz, to prove his claim against him. We have to look at the case upon the general principles of equity, and not as to the mere technical right of the plaintiff. It is true that this agreement between the parties was signed by Dobschutz and Abend

individually, and there might be a technical liability against them for not giving the security which they had agreed to give; but, as has been already said, that did not change the character of the principal indebtedness, and did not make it an individual debt instead of a partnership debt. * * * Looking at this case in its general scope and bearing, as it appears by the facts set forth in the declaration, and considering the various equities of the individual creditors of Dobschutz, and the character of the debt due to the plaintiff, I think that the decision of the District Court was right, and that the plaintiff ought not to be permitted to prove the claim set forth in the declaration against the individual estate of Dobschutz, and therefore that the demurrer to the declaration must be sustained."

The petitioner contends that by reason of his diligence in securing the individual names of the partners to the notes, under the circumstances testified to by him, he has the right to pursue the partnership estate and the individual estates at the same time; the only limitation being the full satisfaction of his debt. Suppose it be conceded that petitioner's testimony as to his extending credit upon the faith of the individual property and the circumstances of the execution of the notes was properly admitted, and that it be given full effect. then the case stands as though there had been written into the notes an express stipulation that "in the event of the bankruptcy of the firm and the members composing it, the payee shall have the right to file this note against the partnership estate and the individual estate of the partners, and share in each until this note is fully paid." In effect this is what the petitioner claims.

The bankrupt law impairs the obligation of the debtor's contracts and discharges him from all of them. The bankrupt court steps in and takes possession of the property of failing debtors, notifies creditors to establish their debts, apportions the debtor's property among his creditors, and gives the debtor his discharge. In case of a partnership the act specifically provides how the partnership and individual property shall be distributed: Section 5f: "The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership." Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3424].

If petitioner is right in his contention here, he, being one creditor only, can make an agreement with his debtor that in the event of bankruptcy another rule of distribution shall be effective. It may be conceded that a failing debtor may make a contract with all of his creditors to distribute the debtor's estate in a different way from that provided in the bankrupt law, but how can it be contended that one creditor may make such a contract with the debtor, to the prejudice of other creditors, when such other creditors are not parties to the contract and know nothing about it?

Petitioner claims that his notes are New York contracts, and that he contracted with reference to that law, etc. All the creditors of the firm and of the individuals composing the firm must be held to have contracted with a view to the bankrupt law and of its provisions relating to the distribution of the debtor's property in the event of bankruptcy, and surely it cannot be held that one creditor, even by the exercise of "superior diligence," can make a contract with the debtor, the effect of which is to change the rule of distribution in the event of insolvency and give him an advantage over other creditors of the class to which he claims to belong. Yet this is just what the petitioner asks. His debt is a partnership debt. He has so declared, and he has filed it against the partnership estate and has already received 30 per cent. of it from that estate. One thing is clear—he is a partnership creditor, and, as such, under the plain letter of the law, he cannot resort to the individual estate until individual creditors are first paid, so reads the law, but he says the debtor agreed that he should be an individual creditor also, and as such should

have the right to resort, notwithstanding the bankrupt law, and notwithstanding it will prejudice the legal rights of the individual creditors, and notwithstanding they knew nothing of and never assented to such an agreement, to share equally with individual creditors for the payment of this debt. To state such a proposition is to answer it.

As between themselves the debtor and petitioner can by contract agree that a debt which is a partnership debt shall be treated as an individual debt, but surely such agreement cannot affect the rights of other individual creditors under the bankrupt law.

The finding and decision of the referee are affirmed.