ROBINSON v. SEABOARD NAT. BANK OF NEW YORK et al.*

In re W. S. KUHN & CO.

(Circuit Court of Appeals, Third Circuit. February 2, 1918.)

Nos. 2261–2263.

BANKRUPTCY ⬤309—CLAIMS—PARTNERSHIP AND INDIVIDUAL ASSETS.

Holders of the joint and several obligations of the members of a partnership, signed in their individual names, but executed in connection with a partnership transaction, are entitled to prove them against both the partnership estate and the individual estates of the partners.

Appeals from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

In the matter of the bankruptcy of James S. Kuhn and William S. Kuhn, partners doing business as J. S. & W. S. Kuhn and W. S. Kuhn & Co. From orders (241 Fed. 935) allowing the claims of the Seaboard National Bank of New York and others against the partnership assets, A. C. Robinson, trustee in bankruptcy, appeals. Appeals dismissed.

J. M. Wright, Alvin A. Morris, and A. J. Barron, all of Pittsburgh, Pa. (Reed, Smith, Shaw & Beal, Patterson, Crawford, Miller & Arensberg, Chantler, McClung & Alexander, and McKee, Mitchell & Alter, all of Pittsburgh, Pa., of counsel), for appellant.

W. F. Knox, of Pittsburgh, Pa. (Herman Aaron, of New York City, of counsel), for appellee Seaboard Bank.

J. M. Shields, of Pittsburgh, Pa., for appellee Purdy.

Sterrett & Acheson, of Pittsburgh, Pa., for appellees Hutchins and Wheeler.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. The large record in this case finally narrows to a few undisputed facts and the deductions to be drawn therefrom. In the court below, a petition in bankruptcy was filed against James S. Kuhn and William S. Kuhn, individually and as partners doing business as J. S. & W. S. Kuhn, and also as partners doing business as W. S. Kuhn & Co. On settlement, there were for distribution assets of J. S. Kuhn individually, of W. S. Kuhn individually, of the partnership of J. S. & W. S. Kuhn, and of the partnership of W. S. Kuhn & Co. J. H. Purdy, the Seaboard National Bank, and Edward Hutchins et al., trustees, proved their respective claims and participat-

ed without objection in the individual estate of J. S. Kuhn and in the individual estate of W. S. Kuhn. When the assets of the partnership of W. S. Kuhn & Co. came on for distribution, Purdy presented his claim, and was allowed again to participate. Thereupon the trustee in bankruptcy took an appeal from such allowance of Purdy's claim in the partnership assets of W. S. Kuhn & Co.

The claim of Purdy is based on a note dated October 10, 1910, for $173,750, signed by J. S. Kuhn, and also by W. S. Kuhn, by which "we jointly and severally promise to pay to J. H. Purdy, or order," etc. Of the general right of Purdy to participate in the individual estates of each of the makers of said note, no question was raised, or indeed could have been. So, also, of the general right of Purdy to prove his note and participate in the partnership estate of W. S. Kuhn & Co., no question was, or indeed could have been, raised, because the proof was that the proceeds of this note were borrowed for and were used in and by said partnership of W. S. Kuhn & Co., and this note was carried in the books of said firm as a partnership indebtedness. The proofs further showed that this was the customary, and indeed virtually the only, way in which that partnership raised funds, and that, of the millions of dollars it borrowed and used in its business, it virtually gave no obligations in its own firm name of W. S. Kuhn & Co., but the individual names of its two partners were always used.

It is, however, contended by the trustee that, although under such circumstances Purdy had a right to resort to either the individual estate or the partnership estate, he could not prove against both partnership and individual estates, but was compelled to elect between the two. To this contention counsel for Purdy answers that they are not driven to an election, but that by the provision "severally promise" of the note Purdy has a contractual right to resort to the personal estate of the makers of the note, and by the superadded provision "we jointly promise" he has a contractual further right to also resort to the joint estate of the makers of the note as well, to wit, to the assets of W. S. Kuhn & Co. They further contend that this superadded joint promise was meant to subject the joint ventures or joint business of the makers of the note to this contract obligation, and that the contract was entered into with a view to such joint liability, that Purdy's money was applied to that purpose, that the note equitably should share in what it helped to create, that the partnership carried it as a partnership debt, and that unless this contract, "we jointly promise," is thus enforced against the joint estate of the makers of the note, the note would be construed and enforced as though it contained no such superadded contract words. The referee sustained this contention, and allowed Purdy's claim against the firm assets of W. S. Kuhn & Co., and his action was approved by the court below, saying:

"I think the doctrine of election between inconsistent remedies on the same claim has no application. When the partners jointly agreed to pay (this being a firm transaction), they bound the firm; and when they severally agreed to pay, they bound themselves as individuals. It is not apparent why this joint or firm obligation, and the several or individual obligations, should differ in principle or legal effect from that where the firm executes the obligation and the individual indorses it."

We think this reasoning covers the case. This is not a case of double proof on a single contract, but of single proof of two separate contracts. The referee and the court below enforced the two distinct contract obligations, embodied in the one note, by enforcing each contract. Those contracts were cumulative, and Purdy's right of enforcement was cumulative, and not restrictively selective. The general principle applicable to the Purdy note is also, mutatis mutandis, decisive of the Hutchins note, because its express terms are the same as Purdy's, and of the Seaboard Bank's note, because the Pennsylvania Negotiable Instrument Act (Act May 16, 1901 [P. L. 194]) makes the statutory construction of its terms the same as Purdy's.

In announcing this conclusion, it is due to counsel, litigants, and this court to here add that the many cases, English and American, bearing on the double proof of claims in bankruptcy, which were cited and discussed at the hearing, have all had due consideration in the preparation of this opinion. Such consideration opens two courses: One, the tempting field of judicial discussion, covering pages and involving long lists of cases, copious extracts of what is now in the reports, and restatements of what has already been said or decided. The other course is to condense in a few lines a syllabus of these authorities. This latter course we have followed in saying that these cases eventually crystallized in the American courts holding that, where there was a double contract obligation in a security, there could be a corresponding double proof. We may add that, in abstaining from a protracted discussion of cases and confining ourselves to a statement of our deductions from them, we respond to that insistent and increasing demand that, in view of the startling growth of judicial reports in these latter days, courts should rigidly limit their opinions to those matters of fact and law which are absolutely necessary to a decision of the case in hand.

The three appeals here involved are dismissed, and the decree below affirmed.